752 So.2d 452 (1999)
Mickey Jerome WALTON, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-CP-00171-COA.
Court of Appeals of Mississippi.
November 23, 1999.
*453 Mickey Jerome Walton, Appellant, pro se.
Office of the Attorney General by Jeffrey A. Klingfuss, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND PAYNE, JJ.
LEE, J., for the Court:
¶ 1. Mickey Jerome Walton was indicted for capital murder; however, he subsequently pled guilty to murder and was sentenced to life imprisonment with the possibility of parole after serving ten years of the life sentence in the custody of the Mississippi Department of Corrections. After sentencing by the trial judge, Walton filed the following pro se petitions and motions: (1) a motion for post-conviction collateral relief, (2) a petition for guilty plea transcript and to proceed in forma pauperis, and (3) motion for reduction of sentence. The trial court entered separate orders denying relief to Walton on each of the aforementioned petitions and motions. It is from these denials that Walton has filed his timely pro se notice of appeal. Walton has asserted several vague issues on appeal, but it is only necessary for this Court to address the following issues: (1) whether the trial court erred in allowing the State to file a response to the petition for post-conviction collateral relief filed by Walton, (2) whether the trial court erred in denying a free copy of the transcript of his guilty plea hearing, and (3) whether the trial court erred in sentencing Walton to life imprisonment with the possibility of parole after serving ten years. Finding these issues to have no merit we affirm the decision of the trial court.

FACTS
¶ 2. A grand jury indicted Walton and Carlos Twillie for killing Jack Thornton while they were committing burglary of an inhabited dwelling, in that Jack Thornton was killed in his own home during the time Walton and Twillie were committing the burglary. Walton and Twillie were indicted for capital murder. Walton was found to be a pauper and was appointed counsel to represent him. Subsequently, the State and the attorneys for Walton entered a plea agreement for murder to which Walton accepted and pled guilty. As a result of his guilty plea, the trial court sentenced Walton to a life sentence with the possibility of parole after ten years of serving the life sentence according to Miss.Code Ann. § 47-7-3 (Supp.1999) in the custody of the Mississippi Department of Corrections. Subsequently, Walton filed a motion for post-conviction collateral relief, a petition for guilty plea transcript and to proceed in forma pauperis, and a motion for reduction for sentence in an effort to obtain an evidentiary hearing and reduction of his sentence. The State filed responses to all of the motions and petitions filed by Walton. The trial court entered orders which denied each of the aforementioned motions *454 and petitions filed by Walton. Subsequently, Walton filed a notice of appeal. Additional facts will be addressed as necessary in the discussion of the issues.

DISCUSSION

I. ERRED IN ALLOWING THE STATE TO FILE A RESPONSE TO THE PETITION OF POST-CONVICTION COLLATERAL RELIEF FILED BY WALTON.
¶ 3. Walton argues that since the trial court had not ordered the State to respond to his petitions and motions, according to the language of Miss.Code Ann. § 99-39-11(3) (Supp.1999), the State's responses were a violation of the aforementioned code section and should have been stricken. Walton has misconstrued this statute.
¶ 4. In the case at bar, it appears that before Walton even has to contend with whether the State's responses were proper he has to overcome the language of Miss. Code Ann. § 99-39-11(2) (Supp.1999) which states that "[i]f it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the prisoner to be notified." This is in fact what happened. The trial judge entered three separate orders addressing the request for petition for guilty plea, post-conviction collateral relief, and reduction of sentence. The trial court summarily denied all of Walton's petitions and motions requesting relief from the court. Miss.Code Ann. § 99-39-11(3) only becomes effective if the trial court does not dismiss the motion under subsection two, and even once subsection three is activated nothing in this section's language forbids the State from filing a response prior to a court order, but states that "[i]f the motion is not dismissed under subsection (2) of this section, the judge shall order the state to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate." Therefore, we find the trial court did not err in considering the State's responses relative to the motions and petitions filed by Walton.

II. WHETHER THE TRIAL COURT ERRED IN DENYING A FREE COPY OF THE TRANSCRIPT OF HIS GUILTY PLEA HEARING.
¶ 5. Walton begins his argument by contending that the trial court erred when it denied him in forma pauperis status. Walton continues his argument by asserting that since he was wrongfully denied the right to pursue his action as a pauper, he was therefore wrongfully denied a free copy of the transcript of his guilty plea hearing. However, Walton admits in his brief on appeal that he had been granted indigent status, and the trial court had appointed two defense attorneys to assist in his defense. M.R.A.P. 6(a)(2) allows an individual who has been granted in forma pauperis status at the trial level to proceed on appeal as a pauper without further authorization. The only caveat is that if before or after the notice of appeal is filed, the trial court shall certify that the party is no longer indigent, then the individual is denied in forma pauperis status. Furthermore, the court is required to state in writing the reasons for said finding and denial. Since Walton's admission of indigent status is supported by the record on appeal, this Court has little question that Walton was proceeding in forma pauperis at the time he petitioned the trial court for a free copy of his guilty plea transcript. This Court, being satisfied that Walton was proceeding in forma pauperis, must now determine whether he was entitled to a free copy of his guilty plea transcripts.
¶ 6. On direct appeal an indigent defendant is entitled to a free transcript. Fleming v. State, 553 So.2d 505, 507 (Miss. 1989). However, when the defendant pleads guilty, he bypasses the right to a direct appeal, and forfeits the right to a free transcript. Id.; see also U.S. v. MacCollom, 426 U.S. 317, 325, 96 S.Ct. 2086, 48 *455 L.Ed.2d 666 (1976). Since Walton pled guilty, he had forfeited his right to a free transcript. Before this Court proceeds to review the prerequisites for obtaining a free transcript pursuant to a motion for post-conviction collateral relief, this Court notes that Walton initially failed to withstand summary dismissal under Miss.Code Ann. § 99-39-11(2) (Supp.1999). In reviewing the summary dismissal of the motion for post-conviction collateral relief in the case at bar, it is helpful to note the approach taken by the Mississippi Supreme Court in Ford v. State, 708 So.2d 73 (Miss.1998).
¶ 7. In Ford, the Mississippi Supreme Court reviewed the denial of a motion for post-conviction collateral relief and request for information filed by Ford. Id. at 74. In the motion for post-conviction collateral relief, just as in the case at bar, Ford argued that he was entitled to a free transcript to establish a claim of ineffective assistance of counsel. Id. In reviewing the argument asserted by Ford, the court relied in part on Miss.Code Ann. § 99-39-11(2) and Fleming v. State, 553 So.2d 505 (Miss.1989).
¶ 8. The court stated that in order to withstand summary dismissal of ineffective assistance of counsel under Miss.Code Ann. § 99-39-11(2) (Supp.1997), the allegation must be asserted with specificity. Ford v. State, 708 So.2d 73, 75 (Miss.1998). The court cited Smith v. State, 434 So.2d 212, 219 (Miss.1983), which states "[one] must specifically allege facts showing that effective assistance of counsel was not in fact rendered, and [one] must allege with specificity the fact that but for such purported actions by ineffective counsel, the results of the trial court decision would have been different." The allegations relative to ineffective assistance of counsel asserted by Ford were as follows: (1) his attorney coerced him into pleading guilty, (2) his attorney did not advise him of possible defenses, and (3) his attorney did not advise him of a speedy trial. Ford, 708 So.2d at 75. Ford did not elaborate on how his attorney coerced him into pleading guilty. Id. The court held that these allegations failed to meet the statutory requirements relative to the allegation of ineffective assistance of counsel due to the fact that the allegations lacked "specificity and detail" to establish a prima facie showing. Id. The court next addressed Ford's request for transcripts and noted that in Fleming a prisoner who has filed a proper motion pursuant to the post-conviction collateral relief act and the motion has withstood summary dismissal under § 99-39-11(2) may be entitled to documents under the discovery provision of § 99-39-15. Ford, 708 So.2d at 75; see also Fleming v. State, 553 So.2d 505, 506 (Miss.1989). Since the court had previously determined that Ford did not withstand summary dismissal he was, therefore, not entitled to documents at the time of his request. Id.
¶ 9. Like Ford, Walton failed to state in his motion for post-conviction collateral relief, which was presented to the trial court, any specific need or particular issue for which the transcript was necessary. Additionally, Walton failed to state how he was prejudiced without the benefit of the transcript. Walton listed the following vague claims which are asserted verbatim:
(1) there exists evidence of material fact, not previously presented and heard that requires vacation of the sentence in the interest of justice.
(2) petitioner's counsel did not discuss viable alternative defenses and misrepresented the petitioner during his plea with the State during sentencing, 6th Amendment, Article 3 § 23.
(3) the statute under which the conviction and/or sentence was obtained is unconstitutional.
Under the aforementioned law and rationale of the Mississippi Supreme Court in Ford, Walton also lacks the specificity and detail necessary to establish the need for a transcript and for a claim of ineffective assistance of counsel. Additionally, this *456 Court notes that the aforementioned arguments asserted by Walton would not normally appear in the transcript, and no benefit would be derived in supplying a free copy. Since the trial court properly dismissed Walton's motion, Walton failed to cross the threshold requirement of withstanding summary dismissal; therefore; he failed to be vested with possible entitlement to discovery documents. Walton's vague assertions and the determination by this Court that summary dismissal by the trial court was appropriate brings forth the conclusion that the trial court was correct in denying Walton's request for a free transcript of his guilty plea hearing for failure to demonstrate need for the documents. When attempting to obtain a free copy of his guilty plea transcript under a motion for post-conviction collateral relief, there are certain prerequisites that must be established before the State is required to furnish a free transcript.
¶ 10. In obtaining a free copy of his guilty plea transcript, Walton has the burden of proving that he has been prejudiced on appeal by not having prior access to such transcript. Taylor v. State, 682 So.2d 359, 366 (Miss.1996). This prejudice can be proven by showing specific need or proving that the transcript was necessary to decide a specific issue. Fleming v. State, 553 So.2d 505, 507 (Miss.1989). If Walton fails to prove substantial need, the State is not required to furnish a free copy of the transcript from the guilty plea hearing. Id.
¶ 11. Bare allegations are insufficient to justify the awarding of a free copy of the guilty plea hearing transcript. U.S. v. MacCollom, 426 U.S. 317, 327, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976). Walton's accusations were not only vague, but he failed to attach any supporting affidavits. Where facts alleged in appellant's petition and brief were not supported by any affidavits other than prisoner's, the petition was properly dismissed. Riley v. State, 748 So.2d 176 (¶ 4) (Miss. Ct.App.1999). In addition to the aforementioned case law, the failure of Walton to attach supporting affidavits fails to meet the statutory requirement of Miss.Code Ann. § 99-39-9 (Rev.1994). That section requires affidavits of witnesses who will testify in support of contentions made in a motion for post-conviction relief relative to ineffective assistance of counsel. The fact that there are no affidavits does not automatically render the motion invalid. Ford v. State, 708 So.2d 73, 75 (Miss.1998). The statute does require affidavits of those witnesses who will testify. Id. In the case at bar, there were witnesses to the vague arguments made by Walton, namely his attorneys. The court notes that Walton subsequently, although still vaguely, made an attempt to elaborate on his arguments for ineffective assistance of counsel in a subsequent motion for post-conviction collateral relief which was not brought before the trial court.
¶ 12. Pursuant to the law enumerated in Ford v. State, 708 So.2d 73, 74 (Miss.1998), and Miss.Code Ann. § 99-39-21 (Rev. 1994), his arguments are procedurally barred. In a footnote in Ford, the Mississippi Supreme Court addressed their holding in Connell v. State, 691 So.2d 1004 (Miss.1997) and explained that an appellant is procedurally barred from asserting a claim based on ineffective assistance of counsel if it is not first alleged on appeal to the trial court. Id.; Miss.Code Ann. § 99-39-21 (Rev.1994), further supports this contention and statutorily mandates procedural bars in instances such as this. Therefore, this Court will not review later arguments asserted by Walton in his subsequent motion for post-conviction collateral relief.
¶ 13. When this Court reviews the totality of the circumstances revealed in the record, we find that Walton has failed to meet his burden and substantiate facts essential to proving need and prejudice. It appears Walton was requesting a free copy of the guilty plea hearing transcript for nothing more than the opportunity to search the transcript for potential claims *457 on appeal. Therefore, the trial court did not err in denying Walton a free copy of his guilty plea transcript, and we find this argument to be without merit.

III. WHETHER THE TRIAL COURT ERRED IN SENTENCING WALTON TO LIFE IMPRISONMENT WITH THE POSSIBILITY OF PAROLE AFTER SERVING TEN YEARS OF THE LIFE SENTENCE.
¶ 14. Walton does not argue that he should not have received any sentence for his involvement in the crime, but that he should have been sentenced as though he were convicted as an accessory which carries a lesser sentence than that imposed for murder. Relative to Walton's argument for accessory status, he also asserts that his attorneys led him to believe that if he did not accept the plea bargain, the death penalty would be sought by the State. In asserting these arguments, Walton overlooks an essential factor: he did not plead guilty to the crime as an accessory. Walton plead guilty to murder.
¶ 15. The record contains a sworn copy of a petition to enter plea of guilty with Walton's name affixed to said petition. The petition to enter plea of guilty clearly states that Walton would be pleading guilty to murder and would be eligible for parole after serving ten years of his life sentence according to Miss.Code Ann. § 47-7-3. Furthermore, the admissions made by Walton relative to his involvement in the crime clearly indicate that he was involved in the commission of the crime before, during and after the burglary, and the taking of the victim's life. The following is a verbatim copy of the statement handwritten by Walton contained in his petition to plead guilty relative to his involvement in the crime:
On January, 27, 1994, I went with Carlos Twillie and we stopped to burglarize a home. I later learned it was the home of Mr. Thornton. We went inside and Mr. Thornton appeared at the house. Carlos Twillie shot Mr. Thornton with a shotgun. Until he took it out of the bag. I did not want anyone to get hurt. I recognize my accomplice liability under Miss. law.
Therefore, if Walton were classified any differently, based on his admitted involvement, it would be as an aider and abettor.
¶ 16. Williams v. State, 463 So.2d 1064, 1066 (Miss.1985), states "[o]ne who aids and abets another ... is an accessory before the fact and is guilty as a principal." Therefore, Miss.Code Ann. § 97-1-3 (Rev.1994), encompasses both accessory before the fact and aiding and abetting and states that "[e]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal has been previously convicted or not." The Mississippi Supreme Court defined aiding and abetting in Hoops v. State, 681 So.2d 521, 533 (Miss.1996), and held that any individual who is present during the commission of a crime and aids, counsels, or encourages another in the execution of that offense is an "aider and abettor" and is as guilty as the principal offender. The principal difference between the accessory before the fact and an aider and abettor is the actual or constructive presence of the individual. Pleasant v. State, 701 So.2d 799, 803 (Miss.1997). If the individual is actually or constructively present at the crime offense, due to the individual's collaboration, he is an aider and abettor. Id.; see also Walters v. State, 218 Miss. 166, 172, 65 So.2d 465, 467 (1953). Most importantly, the Mississippi Supreme Court has held that there is no difference between an accessory before the fact and a principal. State v. Peoples, 481 So.2d 1069, 1070 (Miss.1986). Therefore, whether we classify Walton as an accessory before the fact or an aider and abettor to the gunman, Twillie, his role is tantamount to that of Twillie, the principal. Walton readily admits that he had knowledge that he would be involved in the burglary of the inhabited dwelling and was an active participant in the commission of *458 the burglary. Walton aided and abetted the execution of the crime. Under the aforementioned law he would be punished as if he were the principal; therefore, the death penalty was an option available to the State. This argument is without merit and the requested relief is denied.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF JASPER COUNTY DENYING POST-CONVICTION COLLATERAL RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JASPER COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.