MAXWELL, J.,
for the Court:
¶ 1. “The fact that a witness changes his testimony after the trial does not necessarily entitle the [post-conviction-relief (PCR) ] petitioner to a new trial.”[1] It does, however, entitle him to an evidentia-ry hearing. After this hearing, if the trial judge “is not satisfied that such [changed] testimony is true,” then it is his “right and duty ... to deny a new trial.”[2]
¶ 2. Arthur Woods was granted an evi-dentiary hearing on his successive PCR motion because the statutory-rape victim filled out an affidavit in which she recanted her trial testimony. But at this hearing, the judge — who had also presided over Woods’s trial — found both the victim’s affidavit and her testimony at the hearing were not credible, while her testimony at Woods’s trial had been credible. Because the judge was not satisfied that the recanting testimony was true, he denied Woods’s request for a new trial. After review, we cannot say the judge’s determination was clearly erroneous. Thus, we affirm.
Background
¶3. In 2008, two eighth-grade girls were passing a note back and forth in science class. Their teacher intercepted the note. And when the teacher read the girls’ exchange about both having had sex with the same grown man, the teacher immediately showed the note to one of the girls’ mother, who worked at the school.[3] The ensuing investigation led to charging fifty-one-year-old Woods with two counts of statutory rape involving then fifteen-year-old Amy and fourteen-year-old Katrina.[4] See Miss.Code Ann. § 97-3-65(l)(a)(i) (Supp.2013).[5]
¶ 4. At trial, Katrina testified she and Amy had snuck out of Katrina’s house one night and gone to Woods’s. Both girls went back to Woods’s bedroom, and Woods had sex with each girl twice. Katrina also testified that she loved Woods and did not want anything to happen to him, which is why she had initially told *16 investigators that she had not had sex with Woods. On cross-examination, Katrina admitted she had told Amy that she was only going to testify because her stepmother had threatened her.
¶ 5. During the investigation, Amy had told investigators she had sex with Woods that night. But prior to trial, the State learned Amy intended to recant. The prosecution called Amy anyway. And when Amy testified that she had not had sex with Woods, the State impeached her with her prior sworn statement. At the close of trial, the court dismissed the count charging the statutory rape of Amy based on insufficient evidence.
¶ 6. The jury convicted Woods on the remaining count — the statutory rape of Katrina. The court sentenced him to thirty years’ imprisonment. Woods appealed, and this court affirmed. Woods v. State, 973 So.2d 1022, 1026-32 (¶ ¶ 9-30) (Miss.Ct.App.2008).
¶ 7. In 2010, twenty-one-year-old Katrina swore out an affidavit recanting her trial testimony. In that affidavit, she attested she had never had sex with Woods. She claimed she had been pressured by her parents to testify against Woods in 2005. But now that she was grown, she wanted to make things right. Woods applied for and was granted leave by the Mississippi Supreme Court to file with the trial court a successive PCR motion based on “newly discovered evidence” — i.e., Katrina’s recanted testimony. See Miss.Code Ann. § 99-39-27(9) (Supp.2013). The supreme court also ordered the trial court to conduct an evidentiary hearing.
¶ 8. The hearing took place in August 2011, before the same judge who had presided over Woods’s criminal trial. Katrina testified that her 2010 affidavit reflected the truth, not her 2005 trial testimony.[6] The judge found Katrina’s hearing testimony “unreliable, not credible, and untrue.” The judge remembered Katrina’s previous trial testimony, which he found had been credible. Further, at the PCR hearing, Katrina admitted her 2010 affidavit contained the false assertion that the district attorney had pressured her into testifying in 2005. Finally, the judge found the claim that Katrina’s trial testimony had been coerced by her stepmother had been fully explored at trial and considered by the jury when finding Woods guilty beyond a reasonable doubt. See Woods, 973 So.2d at 1031 (¶27) (addressing on appeal Woods’s argument “that Katrina’s statement that her stepmother would make her leave home if she did not testify against Woods further showed that her credibility was compromised”).
¶ 9. The judge denied Woods’s PCR motion. Woods was granted leave to file a notice of appeal under Mississippi Rule of Appellate Procedure 4(h).
Discussion
¶ 10. On appeal, Woods claims he is entitled to post-conviction relief based on Katrina’s recanted testimony. But “[ejxperienee teaches all courts a healthy skepticism toward recanted testimony.” Yarborough v. State, 514 So.2d 1215, 1220 (Miss.1987). “The fact that a witness changes his testimony after the trial is not alone an adequate ground for granting a new trial.” Russell v. State, 849 So.2d 95, 107 (¶ 15) (Miss.2003).
¶ 11. Recanted testimony is, however, adequate to entitle a petitioner to an evidentiary hearing. This is why the supreme court granted Woods leave to file *17 an otherwise procedurally barred PCR motion and directed the trial court to conduct an evidentiary hearing. See, e.g., Yarborough, 514 So.2d at 1220. The purpose of the evidentiary hearing was “so that the trial court [could] better evaluate the testimony of the recanting witness.” Rushing v. State, 873 So.2d 116, 119 (¶ 4) (Miss.Ct.App.2008) (citing Hardiman v. State, 789 So.2d 814, 817 (¶ 12) (Miss.Ct.App.2001)). Because the judge sat as trier of fact at the PCR hearing, it was his role to resolve whether Katrina had been truthful in 2005 — when she testified she had sex with Woods — or in 2011 — when she recanted. See Esco v. State, 102 So.3d 1209, 1214 (¶ 13) (Miss.Ct.App.2012) (noting that the trial judge resolves credibility issues that arise in a PCR hearing); Turner v. State, 771 So.2d 973, 976 (¶8) (Miss.Ct.App.2000) (holding that, because a recanting witness is a “self-confessed liar,” the trial judge has the task of resolving whether the witness had been lying at trial or was now lying at the PCR hearing).
¶ 12. Based on the inconsistencies in Katrina’s hearing testimony and her demeanor, the judge determined Katrina’s recent testimony was unreliable and untrue. The judge remembered Katrina’s demeanor when she testified in 2005 and found her trial testimony, in comparison, had been credible. Further, he found her justifications for recanting — that she had been coerced by her family to testify against Woods and that she did not want to harm Woods — had already been presented to the jury at the 2005 trial. And the jury resolved those issues, finding Katrina’s trial testimony credible and sufficient to support finding Woods guilty of the statutory rape of Katrina. See Woods, 973 So.2d at 1031 (¶27) (finding that Katrina’s “statements about her stepmother’s threats did not so thoroughly discredit or contradict her testimony that a reasonable jury could not have concluded that she had sex with Woods”).
¶ 13. Consequently, the judge denied Woods a new trial. And “it is the right and duty of the court to deny a new trial where it is not satisfied that [the recanting] testimony is true.” Howell v. State, 989 So.2d 372, 384 (¶33) (Miss.2008) (quoting Bradley v. State, 214 So.2d 815, 817 (Miss.1968)). This determination was within the judge’s “sound discretion” and “should not be set aside unless clearly erroneous.”. Peeples v. State, 218 So.2d 436, 439 (Miss.1969). “In the end we are reviewing a finding of ultimate fact, one made by a trial court sitting without a jury. We do not reverse such findings where they are supported by substantial credible evidence.” Yarborough, 514 So.2d at 1220.
¶ 14. The judge’s decision came down to assessing Katrina’s credibility. The judge had the benefit of witnessing Katrina’s demeanor when she testified in 2005 and later when she recanted in 2011. But we do not. Instead, we have only the inanimate record before us. And from this record we cannot say the judge’s credibility assessment was clearly erroneous. Because the judge supported his decision with substantial evidence, we affirm the judgment denying Woods’s PCR request for a new trial.
¶ 15. THE JUDGMENT OF THE LE-FLORE COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALT. COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR. *18 BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Howell v. State, 989 So.2d 372, 384 (¶ 33) (Miss.2008).

. Id. (quoting Bradley v. State, 214 So.2d 815, 817 (Miss.1968)).

. A fuller account of the events can be found in this court's opinion affirming Woods’s conviction on direct appeal. Woods v. State, 973 So.2d 1022, 1024-26 (¶ ¶ 3-8) (Miss.Ct.App.2008).

. In the direct appeal of Woods's statutory-rape conviction, this court used fictitious names to protect the identity of the minor victims. Id. at 1025 (¶ 3) & n. 1. For consistency, we use the same pseudonyms in this opinion.

."[S]tatutory rape is committed when ... [a]ny person seventeen (17) years of age or older has sexual intercourse with a child who: (i) Is at least fourteen (14) but under sixteen (16) years of age; (ii) Is thirty-six (36) or more months younger than the person; and (iii) Is not the person's spouse[.]” Miss.Code Ann. § 97 — 3—65(l)(a)(i).

. Amy also testified — and also recanted. Amy insisted, contrary to her 2005 trial testimony, but consistent with her initial statement to the police, she and Katrina did have sex with Woods that night in 2003.